| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| CORBYN W. JONES, ESQ. | ) ) ) |
| Defendant. | ) ) ) |

# COMPLAINT

Plaintiff United States Securities and Exchange Commission ("SEC") alleges:

1. Defendant Corbyn W. Jones, a licensed attorney, violated the federal securities laws by misrepresenting to potential investors how their proceeds would be used.

## JURISDICTION AND VENUE

2. The Commission brings this action pursuant to Section 20(b) of the Securities Act of 1933 [15 U.S.C. §77t(b)] ("Securities Act") and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 [15 U.S.C. §§78u(d) and 78u(e)] ("Exchange Act").

3. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1331.

4. Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Acts, practices and courses of business constituting violations alleged herein have occurred within the jurisdiction of the United States District Court for the Western District of Missouri and elsewhere.

5. Defendant directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein, and will continue to do so unless enjoined.

## DEFENDANT

6. **Defendant Corbyn W. Jones, Esq.,** age 44, is a resident of Kansas City, Missouri.

## OTHER PARTIES

7. **Strayne Holdings, LLC** is a Missouri Limited Liability Company formed in March 2019 with its principal place of business in Kansas City, Missouri. Jones organized Strayne with another partner as an operating company to engage in medicinal marijuana cultivation, manufacturing and dispensing. He serves as its CEO. He indirectly owns approximately 42% of the

entity.

8. **1107 Property Management, LLC** is a Missouri Limited Liability Company formed in March 2019 with its principal place of business in Kansas City, Missouri. Jones, along with another individual, organized 1107 Property Management to own, manage, and lease buildings, facilities, land, fixtures, non-cannabis related equipment, and intellectual property. Jones is its CEO. He indirectly owns approximately 42% of 1107 Property Management.

## FACTS

9. In November 2018, Missouri voters approved an amendment to the State Constitution that legalized the growing, manufacturing, selling and consuming of marijuana and marijuana products for medicinal use. Jones capitalized on this development by forming a business to cultivate, extract, and dispense medical marijuana. In March 2019 he formed two companies, Strayne and 1107 Property Management. Around the same time, Jones began seeking investors for the two companies.

10. Before they invested, Jones gave prospective investors "offering documents," many of which he personally signed, such as the "opportunity summaries" and "subscription agreements" for the entities. The offering documents contained information about the companies and the investment opportunity generally.

11. One such document, entitled "Pre-Licensure Use of Funds," listed a $225,000 line item for the CEO's salary for the period of March 15, 2019

through January 1, 2020.

12. There was no written disclosure, for either Strayne or 1107 Property Management, about Jones using investment proceeds, above and beyond his salary, for personal purposes.

13. In early 2019, Jones spoke with prospective investors. He told one prospective investor that until the State of Missouri issued the necessary license, he would earn less than $200,000 annually. For other investors, Jones never disclosed that the investors would be paying him a salary or, that in addition to such a salary, they would be paying his personal expenses.

14. From February 2019 through January 2020, five investors in two states invested more than $650,000 in Strayne and 1107 Property Management. Throughout that timeframe, Jones used a significant amount of those proceeds for purely personal purposes – at least $80,000 beyond his salary.

15. Jones made withdrawals from the corporate accounts to pay for personal expenses.

16. Jones also frequently transferred funds from the corporate accounts to his personal accounts.

17. From March 15, 2019 through January 1, 2020, Jones received approximately $157,000 from the corporate accounts, and used approximately $259,000 of investor funds to pay for personal expenses. During this same time period, Jones deposited approximately $97,000 into the corporate accounts and paid approximately $11,000 in business expenses from his personal accounts.

The total net benefit to Jones was approximately $308,000, which is $83,000 more than the CEO salary of $225,000 that was disclosed to investors.

18. For example, from May 30, 2019 through June 21, 2019, Jones made six transfers from the corporate accounts to his personal accounts, totaling $55,000. From July 30, 2019 through August 31, 2019, Jones made another six transfers from the corporate accounts to his personal accounts, totaling $30,400. In addition, during those periods he wrote two checks drawn from corporate accounts, payable to himself, totaling $8,100.

19. Jones controlled both Strayne and 1107 Property Management. For both entities, he was the CEO. He oversaw the entities' management and day-to-day operations. He had signature authority over Strayne and 1107 Property Management's bank accounts. Jones signed subscription agreements and operating agreements given to investors.

## COUNT I

## Violations of Section 17(a) of the Securities Act

20. Paragraphs 1 through 19 are realleged and incorporated by reference as though fully set forth herein.

21. Defendant, in the offer or sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: (a) employed devices, schemes and artifices to defraud; (b) obtained money and property by means of untrue statements of material fact and by omitting to state material facts
5

necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

22. Defendant acted recklessly and negligently in engaging in the conduct described above.

23. By engaging in the conduct described above, defendant violated Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)].

## COUNT II

### Violations of Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5

24. Paragraphs 1 through 19 are realleged and incorporated by reference.

25. Defendant, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

26. Jones sought to convince investors to purchase membership interests in Strayne and 1107 Property Management, even though he knew investor proceeds would be used for personal purposes. Jones drafted, made, and disseminated material misstatements to investors – both orally and in writing – about the use of Strayne's and 1107 Property Management's proceeds.

27. Jones recklessly engaged in the aforementioned conduct.

28. By reason of the foregoing, defendant violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

**RELIEF REQUESTED**

**WHEREFORE,** the Commission respectfully requests that this Court:

**I.**

Issue findings of fact and conclusions of law that defendant Corbyn W. Jones committed the violations charged and alleged herein.

**II.**

Enter an Order of Permanent Injunction restraining and enjoining defendant, his officers, agents, servants, employees, attorneys and those persons in active concert or participation with defendant who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the

Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 [17 CFR § 240.10b-5] thereunder.

### III.

Issue an Order requiring defendant to disgorge the ill-gotten gains received as a result of the violations alleged in this Complaint, including prejudgment interest.

### IV.

With regard to defendant's violative acts, practices and courses of business set forth herein, issue an Order imposing upon defendant appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d) and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### V.

Issue an Order imposing an officer and director bar pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

### VI.

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant such other relief as this Court deems appropriate.

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

By: /s/ Jonathan S. Polish
Jonathan S. Polish
Amy S. Cotter
Ruta G. Dudenas
Attorney for Plaintiff
**U.S. SECURITIES AND EXCHANGE COMMISSION**
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604

Telephone: (312) 353-7390

Dated: April 22, 2021